THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICHARD NITZ, Defendant-Appellant.

Third District   No. 77-546

Opinion filed June 21, 1978.

Robert Agostinelli and Verlin R.F. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Keefe, State's Attorney, of Rock Island (James E. Hinterlong and John X. Breslin, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal by the defendant, Richard Nitz, from an order of the circuit court of Rock Island County which denied his petition for post-conviction relief.

The scenario of events which resulted in this appeal is as follows. On June 9, 1975, a criminal complaint was filed in the circuit court of Rock Island County which charged the defendant with having committed the offense of burglary.

On July 7, 1975, the defendant appeared in court and submitted a written jury waiver and tendered a plea of guilty. Counsel was at this time appointed to represent the defendant. The court admonished the defendant as to his rights and the State presented a factual basis for the offense of burglary allegedly committed by the defendant. The defendant acknowledged two written waiver forms executed by him which specifically stated that his plea of guilty was voluntary and without

coercion. The trial court did not specifically inquire as to whether the defendant's plea of guilty was motivated by promises or whether there was a plea agreement between the parties, however, there was apparently an off the record discussion of the plea agreement with the trial judge. Following the defendant's waiver of a presentence report he was sentenced to a term of not less than one nor more than three years in the penitentiary.

On March 23, 1976, the defendant filed a *pro se* petition for relief under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1975, ch. 38, par. 122—1 *et seq.*). The petition alleged that his conviction on the burglary charge was secured in violation of his constitutional rights, in that more specifically his guilty plea was involuntary in that it was based upon an unfulfilled prosecutorial promise. The defendant's petition also alleged his indigency and requested the appointment of counsel.

Counsel for the defendant was appointed on July 6, 1976, and on July 12, 1976, the State filed a motion to dismiss the defendant's petition for post-conviction relief. On July 14, 1976, after a hearing on the State's motion, the defendant's petition was dismissed. The defendant appealed from this order of dismissal and this court on July 14, 1977, remanded the cause to the trial court for an evidentiary hearing on the defendant's petition for post-conviction relief.

On September 27, 1977, the evidentiary hearing was conducted. During the hearing the defendant testified that on July 3, 1975, he was sentenced to concurrent terms of one year on three misdemeanor charges which he immediately began to serve in the county jail. The defendant further testified that on July 7, 1975, he was called to the office of Assistant State's Attorney John Malvick in regard to a burglary charge pending against him. It was the defendant's testimony that Mr. Malvick told him that in return for his guilty plea to the burglary charge he would receive a one- to three-year term of imprisonment for the misdemeanor offense, that another pending felony charge against him would be dismissed and that he would be paroled upon his first appearance before the parole board. It should be noted that the defendant could not recall the exact words of the prosecutor, but he stated that he construed the statement regarding parole as a guarantee or assurance of early parole. As we have previously set forth, the defendant did plead guilty to the burglary charge on July 7, 1975, and was sentenced to a term of not less than one nor more than three years in the penitentiary. The defendant after being sentenced was released until noon of the following day pursuant to an agreement with and recommendation of the prosecutor. The defendant began serving his sentence and on March 3, 1976, appeared before the parole board but was denied parole. As we have noted, it was shortly thereafter, to-wit, March

23, 1976, that the defendant commenced his proceedings for post-conviction relief.

The sole issue presented by this appeal is whether the trial court's finding that the prosecutor had not promised or guaranteed the defendant's early parole was manifestly erroneous and hence cannot support a denial of the relief sought in the post-conviction petition.

The defendant claims that he construed the prosecutor's statements as a guarantee or assurance of early parole. We, however, are not concerned as to how the defendant construed the statements of the prosecutor, but instead are concerned with the narrow question as to whether or not the prosecutor did in fact promise the defendant an early parole.

We note from the record that the prosecutor Malvick during the evidentiary hearing emphatically stated that he only discussed *eligibility* for parole. It was Malvick's testimony that:

> " * * * And I never, in any conversation told him that he would be paroled at any certain time, or that I had any authority to see to his release or anything like that. I never created that impression."

The defendant describes his conversation with the prosecutor concerning parole as being "unusual" and because it was unusual the testimony of the prosecutor at the evidentiary hearing should be considered incredible. In order to bolster his contention that the testimony of the prosecutor which related his conversation and actions with the defendant was of an unusual nature, he further calls attention to the fact that the defendant was granted a 24-hour stay of mittimus by the trial court at the recommendation of the prosecutor. The defendant classifies such a recommendation as being most unusual. We fail to follow the defendant's reasoning in regard to the stay of mittimus. Such stays are granted for a variety of purposes, *i.e.,* to enable one to get his business affairs in order or to make arrangements for the care of one's family. While not granted frequently, they occur often enough that they cannot be considered unusual.

The defendant strongly urges two points to support his assertion that the prosecutor's testimony at the evidentiary hearing was false. The first point is that the prosecutor admitted that he promised the defendant that his sentence on the burglary charge would run concurrently with his sentences on the misdemeanor charges. It is the defendant's contention that such a promise is meaningless in that the sentences would run concurrently regardless of any action or promise by the prosecutor since the same was mandated by statute. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(d).) The defendant's argument is that a meaningless promise calls into question the credibility of the prosecutor who made such a promise. In addressing ourselves to the point raised by the defendant we deem it

necessary to set forth a portion of the prosecutor's testimony at the evidentiary hearing which is as follows:

" * * * I proposed that we could dispose of all the charges against him, there was at least one other theft charge against him pending at that time, that we could dispose of all the charges against him by way of a plea agreement where he would be sentenced on the burglary to a term in the Department of Corrections of from 1 to 3 years to run concurrent with his misdemeanor convictions, and that I would dismiss another felony theft that was pending against him.

* * *

Q. All right. Did you attempt in any way to take advantage of him?

A. No, I didn't.

Q. And you didn't promise him anything that you didn't intent to deliver?

A. Not that I know of.

Q. And you didn't make any meaningless promises?

A. No, I didn't.

Q. You just discussed the bargain that you have just told us about on direct examination?

* * *

Q. All right. Now, if we review that plea negoiation [sic] again. You suggested that he plead guilty to the offense of burglary?

A. Correct.

Q. And if he would plead guilty you would recommend a 1 to 3 on the burglary?

A. No. He would be sentenced to a 1 to 3. It was a plea agreement that was to be binding on the Judge, there was no recommendation, it was to be binding.

Q. He was to be sentenced to a 1 to 3 on the burglary?

A. That's right.

Q. And you would see to it that this 1 to 3 ran concurrently with another sentence or sentences that he had on misdemeanors— (INTERRUPTION)

A. No. I would see to it, the Judge would order that.

Q. But did you represent that—How did you represent this to Mr. Nitz? This was something that you promised him as a part of the plea?

A. Yes. It was a part of the plea agreement. It would be a 1 to 3 and the 1 to 3 was to run concurrently with however many misdemeanors he had been sentenced to in Rock Island Court either that week or the week before.

Q. This was something that you were giving him in exchange for his plea of guilty?

A. For his plea of guilty, correct."

As we read the foregoing testimony we cannot agree with the defendant that the prosecutor promised that he would see to it that all the sentences would run concurrently. The bargain aspect of the arrangement entered into between the prosecutor and the defendant was that the defendant would receive a sentence of one to three years and that another felony charge pending against him would be dismissed. The prosecutor's testimony establishes that the fact the sentences would all run concurrently was to be a consequence of his entering into the bargain. This point raised by the defendant is in our opinion too tenuous to be of any merit. We can only conclude that he is engaging in a "play on semantics" and the record does not support his interpretation of the meaning of the prosecutor's testimony.

The second point urged by the defendant in order to destroy the credibility of the prosecutor is his claim that the prosecutor made a nonsensical statement when he told the defendant that he would be eligible for parole in a little less than a year if he kept his nose clean and had no bad marks against him. The defendant asserts that this statement is nonsense since by statute a person with a sentence having a minimum of one year will be eligible for parole in a little less than one year regardless of his behavior, and cites section 3—3—3 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1003—3—3), in support of this contention. Directing our attention to this statutory provision we find that it states:

"§3—3—3. Parole Eligibility.) (a) Every person serving a term of imprisonment under Section 5—8—1 shall be eligible for parole when he has served:

(1) the minimum term of an indeterminate sentence less time credit for good behavior* * *." Ill. Rev. Stat. 1975, ch. 38, par. 1003—3—3.

We believe that the meaning and intent of this statutory provision is clear in that if the defendant had no time credit for behavior he would be eligible for consideration of parole only after he had served the complete minimum sentence of one year. Only if the defendant accrues time credit for good behavior would he be eligible for consideration for parole at a time less than the minimum sentence, to-wit, 11 months. Dept. of Corrections, Adult Div., Admin. Reg. 813(II)(A)(2).

The statement of the prosecutor cannot be classified as a nonsensical one because the information he imparted was correct.

We cannot agree with the defendant that the record in this case of the

post-conviction evidentiary hearing supports a finding that the trial court's decision was against the manifest weight of the evidence. The credibility of a witness in a post-conviction proceeding is a matter for the trial judge to determine. (*People v. Hayes* (1975), 29 Ill. App. 3d 756, 331 N.E.2d 249.) Unless something appears in the record which shows that the determination by the trial judge was manifestly erroneous then the decision by that judge who had the opportunity to see and hear each witness shall be upheld by the reviewing court. *People v. Bracey* (1972), 51 Ill. 2d 514, 283 N.E.2d 685.

We have considered the contentions of the defendant which he has advanced in an effort to cast doubts upon the credibility of the prosecutor in the instant case. We do not find the arguments and the contentions of the defendant persuasive.

For the reasons set forth the judgment of the circuit court of Rock Island County denying defendant's petition for a post-conviction hearing is affirmed.

Affirmed.

BARRY, P. J., and STENGEL, J., concur.